Entered on Docket Nov. 07, 2008

PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**November 7, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>JAMES BRIAN PIZL and CHRISTINE MARIE PIZL,<br><br>              Debtors. | Case No. 07-41497 |
| BBFM, INC., dba RADARWORKS, a Washington Corporation,<br><br>              Plaintiff,<br><br>v.<br><br>JAMES BRIAN PIZL, and his marital community, dba PINK COCONUT INTERNATIONAL, INC., an unknown entity, and PINK HOLDINGS, LTD, a Washington corporation,<br><br>              Defendants. | Adversary No. 07-04105<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on October 15 and 17, 2008. BBFM, Inc., dba Radarworks (Plaintiff), in accordance with its complaint, seeks to have the debt owed by James Brian Pizl, and his marital community, dba Pink Coconut International, Inc. and Pink Holdings, LTD

MEMORANDUM DECISION - 1

(Defendants) declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B)[1]. At the conclusion of the trial, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I

## FINDINGS OF FACT

James Brian Pizl (Debtor) is the former president of Pink Coconut International, Inc. and Pink Holdings, Ltd. (collectively Pink Coconut), which own indoor tanning salons. The Debtor is also a licensed attorney and a certified public accountant (CPA).

On September 13, 2005, the Debtor as the president of Pink Coconut completed and signed a Confidential Credit Application and Agreement (Original Credit Application) with the Plaintiff, an advertising and marketing agency. The Debtor provided the names and contact information for four commercial credit references. Ray Araujo, the owner and chief executive officer of the corporate Plaintiff, testified that he makes all determinations as to which clients the Plaintiff will extend credit, although, he had no independent recollection of reviewing the Original Credit Application submitted by the Debtor. There is no evidence that Mr. Araujo or any members of his staff contacted the references listed on the Original Credit Application.

On September 22, 2005, the Debtor as the president of Pink Coconut entered into a Revised Agency Agreement with the Plaintiff, whereby the Plaintiff agreed to provide account supervision and guidance on marketing in exchange for a monthly service fee. Special marketing projects would be estimated, receive prior approval, and then billed separately. Mr.

---

[1] Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by BAPCPA, Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 2

Araujo testified that the Debtor informed him Pink Coconut had an annual budget of $400,000 for marketing. On this same date, the Plaintiff obtained a Dun & Bradstreet Report of Pink Coconut. This report recommended a conservative credit limit of $15,000 and an aggressive credit limit of $25,000 for the Plaintiff's financial dealings with Pick Coconut. Mr. Araujo recalled he reviewed this report sometime between September 22 and 26, 2005.

On September 26, 2005, the Debtor on behalf of Pink Coconut entered into a Project Proposal: Pink Coconut Re-branding (Re-branding Agreement). On this same day, the Debtor completed a second Confidential Credit Application and Agreement (Second Credit Application). In this application, the Debtor listed the "[a]pproximate present net worth of corporation ($)" as $2,000,000. The Debtor checked as in effect for the business a UCC-1 Financing Statement, a Bank Loan, and a Corporate or Personal Guaranty. The Debtor also signed a personal guaranty for the Pink Coconut debt. Mr. Araujo testified that it was only after receiving the personal guaranty that he agreed to do business with Pink Coconut on credit.

At the time of Pink Coconut's two credit applications, the Plaintiff had no objective procedure in place for checking the creditworthiness of prospective clients. In the case of Pink Coconut, Mr. Araujo intermittently met with the Debtor and management team; received an internal endorsement from a person with knowledge of the Debtor's business; and obtained a Dun & Bradstreet Report. The Plaintiff did not request a copy of Pink Coconut's financial statement; did not contact its references; did not inquire about the company's present UCC financing statements, bank loans, or guaranty; and did not follow the credit limit recommendation in the Dun & Bradstreet Report.

While Pink Coconut initially paid for services provided by the Plaintiff relating to re-branding and paid two invoices totaling $7,000 to the Plaintiff, Pink Coconut thereafter failed to pay the Plaintiff's invoices as they came due. The amount due and owing the Plaintiff is $163,938.11, although the amount was disputed by the Defendants.

On May 10, 2007, James and Christine Pizl filed bankruptcy under Chapter 7. On August 13, 2007, the Plaintiff filed its complaint under 11 U.C.S. § 523(a)(2)(B). At the time that the complaint in this case was filed, the Plaintiff's deposition testimony admitted that he still was not aware of the falsity of the net worth statement.

## II

## CONCLUSIONS OF LAW

11 U.S.C. § 523(a)(2)(B) excepts from discharge a debt for money, property, services or credit to the extent obtained by

> (B) use of a statement in writing –
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

To satisfy § 523(a)(2)(B), a creditor must prove by a preponderance of the evidence the following requirements:

> (1) a representation of fact by the debtor,
> (2) that was material,
> (3) that the debtor knew at the time to be false,
> (4) that the debtor made with the intention of deceiving the creditor,
> (5) upon which the creditor relied,
> (6) that the creditor's reliance was reasonable,
> (7) that damage proximately resulted from the representation.

MEMORANDUM DECISION - 4

Candland v. Ins. Co. of N. America (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996) (quoting Siriani v. Nw. Nat'l. Ins. Co. (In re Siriani), 967 F.2d 302, 304 (9th Cir. 1992)).

The Defendants first contend that the Plaintiff has not established a basic requirement under § 523(a)(2)(B)—that the $2,000,000 representation in the Second Credit Application as to "[a]pproximate present net worth of the corporation ($)" is a statement respecting Pink Coconut's financial condition. They further contend that if it is such a statement, the Plaintiff has failed to prove six of the remaining seven requirements: the statement was material; the Debtor knew it was false; he made it with the intention of deceiving the Plaintiff; the Plaintiff relied on this statement; the Plaintiff's reliance was reasonable; and the damage proximately resulted from the representation.

A.  Statement Respecting Pink Coconut's Financial Condition

As the Defendants note, there is no controlling authority in the Ninth Circuit as to whether a broad or narrow interpretation of the term "financial condition" should be applied.

> Under the broad view, it appears that any statement respecting a debtor's financial condition will meet the definition of the term "financial statement." However, the narrow view holds that "[t]he ordinary usage of 'statement' in connection with 'financial condition' denotes either a representation of a person's overall 'net worth' or a person's overall ability to generate income." Jokay Co. v. Mercado (In re Mercado), 144 B.R. 879, 885 (Bankr. C.D. Cal. 1992). See also Soderlund, 197 B.R. at 745.

Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 70 (9th Cir. BAP 1998) (footnote omitted). In Tallant, cited by the Defendants, the Ninth Circuit Bankruptcy Appellate Panel did not need to decide this issue, as it determined that a profit and loss statement concerning a law practice falls within both the narrow and broad definitions.

Similar to the court in Tallant, the Court here concludes that the $2,000,000 representation in the Second Credit Application requesting an "[a]pproximate present net

MEMORANDUM DECISION - 5

worth of the corporation ($)" is within both the narrow and broad definitions. It falls within the narrow definition because, by its own terms, it denotes a representation of Pink Coconut's net worth. As such, it necessarily falls within the broad definition as well. The Plaintiff has established that the statement concerns Pink Coconut's financial condition.

B.  Knowledge of Falsity

There is no real dispute that the $2,000,000 approximate net worth amount provided by the Debtor in the Second Credit Application was false when provided on September 26, 2005. The Plaintiff presented persuasive testimony from the Pink Coconut balance sheet that the net worth at that time was less than $500,000. The Debtor, however, testified that he valued Pink Coconut based on a theoretical market value of the company, admittedly not based on the definitive net worth calculation of assets minus liabilities. The Debtor testified that he considered a year's gross receipts, which were $4,000,000, and the yearly net income of approximately $400,000, in his valuation.

The Plaintiff's expert witness testified that "net worth" for a closely held corporation is determined by subtracting liabilities from assets. This testimony is consistent with the Ninth Circuit Court of Appeal's recognition that the common and well-established meaning of "net worth" is "the difference between a corporation's total assets and its total liabilities." Bolt v. Merrimack Pharmaceuticals, Inc., 503 F.3d 913, 916 (9th Cir. 2007).

It appears disingenuous that the Debtor, a licensed attorney and CPA, did not understand or was not familiar with the common meaning of "net worth" when he completed the Second Credit Application. Indeed, the Debtor acknowledged in his testimony that it was "stupid" of him to have indicated $2,000,000 as the approximate net worth of Pink Coconut. As the Ninth Circuit Court of Appeals recognized in Candland, in determining whether the

MEMORANDUM DECISION - 6

Debtor knew the statement was false, this Court can consider that the Debtor was a licensed attorney and CPA. See Candland, 90 F.3d at 1468, 1469-70 (where court considered the debtor's business sophistication—experienced businessman holding a law degree, securities license, insurance license, annuity license, and real estate license—in determining that the debtor made knowing misrepresentations of fact). The Court concludes that a person with the Debtor's education and experience would have known that the common and well-established meaning of "net worth" was assets minus liabilities. The Plaintiff has established by a preponderance of the evidence that the Debtor knew his statement was false.

C. Materiality of Statement

In the Ninth Circuit, the standard of materiality for § 523(a)(2)(B) is that "[m]aterial misrepresentations . . . are substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision." Candland, 90 F.3d at 1470. In addition to showing that the statements are inaccurate, the creditor must show "that they contain important and substantial untruths." Candland, 90 F.3d at 1470 (quoting First Interstate Bank of Nevada v. Greene (In re Greene), 96 B.R. 2797, 283 (9th Cir. BAP 1989) (citations and quotations omitted)). In Candland, the Ninth Circuit Court of Appeals concluded that misrepresentations of financial condition "of the order of several hundred thousand dollars . . . are the type which would generally affect a lender's or guarantor's decision." Candland, 90 F.3d at 1470.

In this case, the persuasive evidence establishes that when the Debtor completed the Second Credit Application, Pink Coconut had a net worth of less than $500,000, which is $1,500,000 less than the net value indicated by the Debtor. Based on the standard set forth in Candland, the Debtor's inaccuracy of net worth of over $1,000,000 is the type that would

MEMORANDUM DECISION - 7

have affected the Plaintiff's decision to extend credit to Pink Coconut and the Debtor. The Plaintiff has met its burden regarding the materiality element.

D. Intent to Deceive

Under § 523(a)(2)(B), "fraudulent misrepresentation is established by showing 'either actual knowledge of the falsity of a statement, or reckless disregard for its truth . . . .'" Gertsch v. Johnson & Johnson, Finance Corp. (In re Gertsch), 237 B.R. 160, 167 (9th Cir. BAP 1999) (quoting Houtman v. Mann (In re Houtman), 568 F.2d 651, 656 (9th Cir. 1978)). Thus, intent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth. Gertsch, 237 B.R. at 167-68.

In Groth v. Masegian (In re Masegian), 134 B.R. 402, 404 (Bankr. E.D. Cal. 1991), the debtor, an attorney and president of a mortgage company, failed to disclose in a personal financial statement that he was the named defendant in an active lawsuit claiming $150,000 in personal liability. The court held that considering the debtor's background and experience as an attorney and mortgage company president, his failure to disclose the lawsuit and carefully review his answers was "reckless indifference or disregard of the accuracy of his information" and established intent to deceive. Masegian, 134 B.R. at 406. The court relied on several cases supporting the rule that "it is well-established that reckless indifference or disregard of the accuracy of a financial statement is sufficient to support a nondischargeability action under section 523(a)(2)(B)." Masegian, 134 B.R. at 406 (citing In re Coughlin, 27 B.R. 632, 636 (1st Cir. BAP 1983) (requirement of intent to deceive satisfied where debtor signed loan application without reading it); Modern Distributors, Inc. v. Gray, 22 B.R. 676 (Bankr. W.D. Wis. 1982) (intent to deceive present where debtor saw financial statement and errors were such that he knew or should have known of their falsity)).

MEMORANDUM DECISION - 8

In this case, the Debtor acknowledged that it was "stupid" of him to put $2,000,000 as the approximate net value of Pink Coconut. In doing so, the Debtor ignored the common and well-established meaning of "net worth," as well as his training as a CPA and attorney, and instead relied on his own subjective belief that this term meant a theoretical market value of the company. Similar to the debtor in <u>Masegian</u>, the Debtor in this case acted with reckless indifference or disregard for the truth when he listed $2,000,000 as the approximate net value on the Second Credit Application. The Plaintiff has established intent to deceive, through reckless indifference to the truth, by a preponderance of the evidence.

E.   Reliance on the Statement

The Defendants contend that the Plaintiff has not established that it relied on the $2,000,000 net worth statement in the Second Credit Application. The Court agrees.

The credible and persuasive testimony establishes that while the Plaintiff relied on the Debtor's personal guaranty, it did not rely on the net worth statement. Mr. Araujo testified that he did not recall reviewing the Original Credit Application, which contained no statement of net worth or personal guaranty. He testified that prior to receiving the Second Credit Application, which contained both items, he was concerned with obtaining the Debtor's personal guaranty. Mr. Araujo gave no testimony that before agreeing to do business with the Debtor and Pink Coconut or extend credit to them, a requirement was to review Pink Coconut's approximate net worth. Furthermore, the Plaintiff provided no evidence or testimony to this effect from other employees who would have been involved in obtaining financial information from Pink Coconut, such as its financial manager or director of operations. Finally, at the time of Pink Coconut's credit applications, the Plaintiff did not have in place or utilize any procedure to

actually investigate or confirm net worth, or to even check on the assets and liabilities of the potential client.

The Court recognizes that in a leading question by Plaintiff's attorney, Mr. Araujo testified that he relied on both additional items in the Second Credit Application in deciding to extend credit to Pink Coconut. However, considering that the remaining testimony and evidence omitted any suggestion of reliance on the net worth statement, the Court finds this testimony is not credible. Instead, the credible testimony of Mr. Araujo and the Debtor continually stressed the importance of only the personal guaranty and that without a personal guaranty by the Debtor, the Plaintiff would not conduct business with Pink Coconut or extend it and the Debtor credit.

The Plaintiff, nonetheless, points to the second paragraph under the Terms and Conditions of the Second Credit Application to support its position that it relied on the $2,000,000 statement. This paragraph states that "the information provided in this application will be relied upon by Creditor in its decision of whether to extend credit." Plaintiff's reliance on this paragraph is hollow and disingenuous, however, as Mr. Araujo testified that he did not provide the content for the application form; he acknowledged that he did not know the meaning or significance of several terms on the application (UCC-1 Financing Statement); he testified that it was his prerogative to deviate from the form; he testified that he did not even review the Original Credit Application; and he testified that he did not routinely, or in this case, request documents listed on the form or contact references provided by applicants on the form. In summary, a preponderance of the evidence, the credibility of the parties, and Mr. Araujo's testimony establish that the only portion of the form on which Mr. Araujo routinely relied, or relied in this case, was the personal guaranty of the applicant.

MEMORANDUM DECISION - 10

The Plaintiff has failed to establish that it relied on the $2,000,000 net worth statement provided by the Debtor in the Second Credit Application.

F. <u>Reasonableness of Reliance</u>

Even if the Plaintiff established that he relied on the net worth statement, the Plaintiff has not established by a preponderance of the evidence that this reliance was reasonable. When there is evidence of materially fraudulent statements, "little investigation is required for a creditor to have reasonably relied on the representations." <u>Gertsch</u>, 237 B.R. at 170.

While the Court has determined that the Debtor recklessly made a material false statement regarding Pink Coconut's financial condition, the Plaintiff has presented no authority that in the event a creditor investigates a debtor's financial condition, it can ignore the results of its own investigation. In this case, the Plaintiff obtained a Dun & Bradstreet Report of Pink Coconut on September 22, 2005. Mr. Araujo testified that he believes he reviewed this report sometime between September 22 and September 26, 2005, the date of the Debtor's personal guaranty in the Second Credit Application and the date the Plaintiff agreed to open an account with Pink Coconut and the Debtor. Notably, this report recommends a conservative credit limit for Pink Coconut of $15,000 and an aggressive credit limit of $25,000. Upon conducting business with the Plaintiff, the Debtor went almost immediately into default and owes the Plaintiff $163,938.11, over six times the aggressive credit limit of $25,000.

In addition to failing to act in accordance with the Dun & Bradstreet Report, the Plaintiff failed to avail itself of any of the financial precautions that it had put into place by way of its form credit application. This includes failing to call four listed references; failing to request copies of Pink Coconut's financial statement; and failing to perform a UCC search or even

MEMORANDUM DECISION - 11

inquiring of the Debtor about any outstanding loans for Pink Coconut. Further, Pink Coconut was a prospective new client, and the Plaintiff was advised that the Debtor had budgeted $400,000 per annum for marketing. Even though the Plaintiff recognized this was a sizeable account, the credible evidence establishes that it was only interested in a personal guaranty. Plaintiff's own expert witness testified that he would have "check[ed] out" a person if he was granting him $400,000 in credit. Mr. Araujo's own deposition testimony indicated that he was unsure of the falsity of the net worth statement when he filed the present action. The Plaintiff has not established by a preponderance of the evidence that if it relied on the $2,000,000 net worth statement, it reasonably relied on it.

G. Proximate Cause

Because the Plaintiff has not established reliance, or reasonable reliance, on the statement of net worth, the Plaintiff is unable to establish proximate cause. Accordingly, the Plaintiff has not proven all requisite elements for a finding of nondischargeability under § 523(a)(2)(B).

DATED: November 7, 2008

_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 12